IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DIGITAL GENERATION, INC. f/k/a, DG FASTCHANNEL, INC., | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 3:12-CV-00329-L |
| STEVEN A. BORING, | § § § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the court is Plaintiff's *Ex Parte* Motion for Temporary Restraining Order and Preliminary Injunction in Aid of Arbitration, filed February 1, 2012. After considering the motion, record, and applicable law, the court **denies without prejudice** Plaintiff's *Ex Parte* Motion for Temporary Restraining Order. The court will rule on Plaintiff's Motion for Preliminary Injunction in Aid of Arbitration after service has been effected on Defendant Steven A. Boring ("Boring") and he has had an opportunity to file an answer in the action and a response to Plaintiff's motion.

**I.    Background**

Plaintiff Digital Generation, Inc. f/k/a DG FastChannel, Inc. ("DG") commenced this action on January 31, 2012, against former employee Boring, seeking only injunctive relief in the form of an *ex parte* temporary restraining order ("TRO") and preliminary injunction. DG also initiated a related arbitration against Boring in Dallas, Texas. The arbitration and this action both stem from DG's belief that Boring has or will breach an employment agreement that precludes him from: (1) soliciting, for a period of twelve months after leaving DG, DG's customers or prospective customers

with whom he had contact with regarding DG's business during the previous two years; (2) disclosing confidential information defined as "any trade secret, confidential, proprietary, or non-public information and materials concerning [DG] or its clients"; and (3) recruiting other DG employees for a period of one year after leaving the company. Pl.'s Compl., Ex. A, ¶¶ 2, 4, and 5.

DG provides advertising and related services. Boring joined DG in 2004 as a regional sales manager for DG's Detroit office after his former employer was acquired by DG. Boring oversaw or participated in a majority of DG's advertising sales to clients in the Detroit area and was responsible for advertising that DG provided to two of its biggest clients, General Motors ("GM") and Chrysler Group ("Chrysler"). While employed by DG, Boring was also privy to certain information that DG considers confidential, including marketing strategies, client lists, and DG employee contact information. On March 7, 2011, Boring signed the employment agreement at issue in which he agreed not to compete with DG or disclose confidential information.

Later that same year on December 16, 2011, Boring received an offer of employment from Extreme Reach, another advertising agency in the Detroit area. The offer of employment states that Boring will receive $10,000 if can get both GM and Chrysler to sign contracts with Extreme Reach. The letter offer also states with regard to Boring's previous employment:

As a condition of your employment with Extreme Reach you agree that you will NOT:

1.) Bring with you or share any non public information about your previous employer
2.) Solicit any customers you worked with at your previous employer unless instructed to do so by [Extreme Reach]
3.) Solicit former colleagues for employment at Extreme Reach

**Memorandum Opinion and Order - Page 2**

Pl.'s Compl., Ex. C p. 3. Boring accepted the offer of employment and notified DG on December 19, 2011, of his resignation and decision to work for Extreme Reach. During a meeting on December 19, 2011, Boring stated that he did not intend to compete directly with DG.

Before leaving DG, Boring requested that he be able to access a folder on his DG laptop that contained personal information. DG discovered that the folder accessed by Boring contained personal information, as well as information that DG considers confidential, including: an internal DG presentation regarding high definition advertising; holiday client mailing lists for 2010 and 2011; a DG employee contact sheet containing employee cell phone numbers; a pricing document; a GM high definition rate reduction agency letter; and a sales report regarding November pricing for the Detroit area. It is not clear from DG's motion or pleadings whether this discovery was before or after Boring left the company. It is also unclear whether Boring took copies of these materials with him when he left the company. DG nevertheless asserts that it is "now at risk of having Mr. Boring disclose [DG's confidential information] to, or use the information for the benefit of, Extreme Reach, which directly competes with DG." Pl.'s Mot. 13.

Boring started working for Extreme Reach on January 3, 2012, as its regional director of sales. On January 19, 2012, Extreme Reach issued a press release stating that it intended to open a Detroit office to expand its presence to the Detroit auto industry hub. On January 25, 2012, DG received information from an unspecified source that Boring and Chris Palmer ("Palmer"), another former DG employee, had visited Goody Silverstein & Partners ("Goody"). According to DG's complaint, Goody provides a large volume of advertising for GM. DG therefore maintains that "it appears that Mr. Boring is directly soliciting GM to move its advertising business from DG to Extreme Reach, in violation of the non-solicitation provision of the Employment Agreement." Pl.'s

**Memorandum Opinion and Order - Page 3**

Compl. 8, ¶ 23. In addition, DG contends that "[i]f Mr. Boring is permitted to recruit personnel from DG to Extreme Reach, DG's Detroit office will wither, the relationships it has developed with advertisers will diminish, if not terminate altogether, and DG will be irreparably harmed." Pl.'s Compl. 12, ¶ 40.

DG requests the court to enter an *ex parte* TRO that restrains Boring, for a period of fourteen days, from violating the employment agreement. DG further requests that the court set a hearing on DG's request for preliminary injunction within fourteen days of entering an order on its request for a TRO.

## II.     Standard for Preliminary Injunction and Temporary Restraining Order

There are four prerequisites for a preliminary injunction or temporary restraining order. A court may grant such relief only when the movant establishes that:

> (1) there is a substantial likelihood that the movant will prevail on the merits; (2) there is a substantial threat that irreparable harm will result if the injunction is not granted; (3) the threatened injury [to the movant] outweighs the threatened harm to the defendant; and (4) the granting of the preliminary injunction will not disserve the public interest.

*Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987); *Canal Auth. of the State of Florida v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974) (en banc). The party seeking such relief must satisfy a cumulative burden of proving each of the four elements enumerated before a temporary restraining order or preliminary injunction can be granted. *Mississippi Power and Light Co. v. United Gas Pipeline*, 760 F.2d 618, 621 (5th Cir. 1985); Clark, 812 F.2d at 993. *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989). "The decision to grant a preliminary injunction is to be treated as the exception rather than the rule." *Mississippi. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985).

**Memorandum Opinion and Order - Page 4**

A TRO is "simply a highly accelerated and temporary form of preliminary injunctive relief." *Hassani v. Napolitano*, 2009 WL 2044596, at *1 (N.D. Tex. July 15, 2009) (Fitzwater, C.J.). The purpose of a temporary restraining order is to "preserv[e] the status quo and prevent[ ] irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974). Any temporary restraining order, therefore, is a temporary measure to protect rights until a hearing can be held.

Under Rule 65(b)(1) of the Federal Rules of Civil Procedure, the court may issue a TRO without notice to the adverse party or its attorney, but only if both of the following requirements are met:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1)(A)-(B). Thus, a TRO cannot be issued *ex parte* absent a clear showing that immediate and irreparable injury will result before the adverse party can be heard. *Id.*

## III.   Analysis

The essence of DG's motion and request for a TRO is that *if* Boring violates the employment agreement before the arbitration is resolved, DG will be irreparably harmed. DG does not argue, however, that there is an immediate and substantial threat that it will suffer irreparable harm between the time the TRO application was filed and when the court can address its request for preliminary injunction through the normal motion procedures. In addition, DG does not explain why it will suffer immediate and irreparable harm if notice is provided to Boring.

Moreover, DG's fear that Boring could or might violate the employment agreement is too speculative and not sufficient to establish its burden of clearly showing that immediate and irreparable injury will result before Boring can be heard in opposition. That Boring visited Goody does not establish that he did so to solicit GM's business. DG does not allege that GM is Goody's only customer. Thus, it is possible that Boring visited Goody for another permissible purpose. Likewise, Extreme Reach's desire to acquire GM's and Chrysler's business does not clearly establish that Boring has or intends to solicit either company's business in the immediate future or the next twelve months, particularly when viewed in light of Boring's statement that he does not intend to compete with DG and the non-solicitation provision in Extreme Reach's offer letter.

Boring's accessing what DG describes as confidential information while he was still employed by DG is similarly insufficient to show that there is an immediate and substantial threat that he has or will violate the employment agreement's nondisclosure provision. Indeed, DG's decision to wait 44 days after Boring's termination before seeking a TRO suggests that the perceived risk to DG is not immediate. Finally, DG does not allege or argue that Boring recruited Palmer or any other DG employee to work for Extreme Reach in violation of his employment agreement; nor is there anything to indicate that he intends to recruit DG employees.

Consequently, the court is unpersuaded that these perceived harms, which are speculative at best, are immediate and irreparable. *Holland America Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985) ("Speculative injury is not sufficient; there must be more than an unfounded fear on the part of the applicant."). Accordingly, DG is not entitled to a TRO based on the record before the court. Because DG has failed to carry its burden of clearly showing that it will suffer immediate

and irreparable harm before Boring can be heard in opposition, the court need not address at this time the other requirements for obtaining a TRO and preliminary injunction.

IV.     **Conclusion**

For the reasons herein explained, the court **denies without prejudice** Plaintiff's *Ex Parte* Motion for Temporary Restraining Order. The court will address by separate order DG's request for a preliminary injunction after Boring has had an opportunity to file an answer or otherwise respond in the action, and to respond to Plaintiff's Motion for Preliminary Injunction in Aid of Arbitration. The court **directs** Boring to file a response to Plaintiff's Motion for Preliminary Injunction in Aid of Arbitration **within 14 days** after the deadline to file an answer or otherwise respond. After briefing on Plaintiff's Motion for Preliminary Injunction in Aid of Arbitration is complete, the court will notify the parties whether a hearing is necessary to assist the court's resolution of the matter.

**It is so ordered** this 2nd day of February, 2012.

_____
Sam A. Lindsay
United States District Judge